UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAYSON ASSOCIATES, INC.,
    Plaintiff

V.                                        CIVIL ACTION
                                           NO. 04-10771-RWZ

UNITED PARCEL SERVICE CO.,
    Defendant

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ALL COUNTS OF PLAINTIFF'S COMPLAINT

The plaintiff, Jayson Associates, Inc. ("Jayson") hereby submits this memorandum of law in opposition to defendant's motion to dismiss all counts of the plaintiff's complaint.

### I.    FACTS

This case was removed from the Massachusetts Superior Court.

Jayson is a Massachusetts corporation engaged in business as an advertising agency. (Compl. ¶1). The defendant, United Parcel Service Co. ("UPS") is a duly registered foreign corporation which does business within the Commonwealth of Massachusetts. UPS is engaged in the business of delivering freight, parcels and private mail (Compl. ¶2). Jayson alleges that it developed a line of promotional products called "Track Stars" consisting of three-dimensional paper UPS trucks and vehicles. The promotional products

- 1 -

consisted of paper with precut lines to enable a user to punch out a precut vehicle and assemble it. The assembly results in a paper model of a UPS delivery truck and two race cars with UPS markings. Copies of the cut-out are attached to the plaintiff's complaint as Exhibits 1 through 3. (Compl. ¶3). A description of the race cars contains a picture of the cars with various names and wording thereon., i.e. "Track Stars" (Compl. ¶3, Exhibits 1 and 3). The third paper model cut out (Compl. ¶3, Exhibit 2) consisted of a replica of a UPS delivery truck. It also contains the words "TRACK STARS".

The defendant in its memorandum concedes that Jayson developed a line of promotional products which included, *inter alia*, a paper model of a UPS vehicle (defendant's memorandum, p.2).

All of the products developed by Jayson contained the following language:

> "drawings and the concept they embody are the sole property of Jayson Associates, Inc. All rights reserved. ©2000 Jayson Associates, Inc." (Compl. ¶4)"

In April of 2001, Jayson forwarded a letter to UPS indicating that it had produced a line of "... promotional products called Track Stars" Jayson indicated that these "cost effective fun toys" would make great impressions on those who received them and that they were an effective means to advertise.

Jayson further indicated that the product was ". . . a unique sales tool for all to see". (Compl. ¶5, Exhibit 4).

On April 20, 2001 UPS wrote to Jayson indicating that they were not at this time interested in these ". . . sponsorship opportunities . . .". In May of 2001, Jayson attended a UPS open house in Chelmsford, Massachusetts and discussed its Track Stars program with UPS representatives. (Comp. ¶6). At the request of UPS, Jayson sent another letter dated May 22, 2001 again presenting the Track Stars promotional product. That letter included a three-dimensional UPS truck and race car cut out. (Compl. ¶6, Exhibit 6). In that letter, Jayson once again indicated that it was presenting a line of promotional products which would be a cost effective as a way to advertise. Jayson again indicated that this product would be a "unique" sales tool. Jayson's letter of May 22, 2001 was sent to UPS representatives in Chelmsford, Massachusetts and Hudson, New Hampshire.

In October of 2001, Jayson once again presented its product to a UPS representative. At that time, Jayson indicated that its Track Stars concept was coupled with various three dimensional UPS trucks and race cars. UPS representative, Carolyn Boucher expressed her interest and indicated that she would present it to UPS corporate headquarters in Georgia. Ms. Boucher specifically requested pricing quotes which Jayson provided in a letter dated October 30, 2001. (Compl. ¶7, Exhibits 7 and 8). Exhibit 8 of the plaintiff's

complaint consists of a specific price quotation indicating different prices based upon the quantity to be used by UPS. The pricing information included all art, production, printing, varnish, die cutting and packaging costs.

Jayson received no further response from UPS (Compl. ¶8).

In February, 2003 Jayson learned that UPS had used three dimensional paper UPS delivery trucks in a nationwide promotional campaign to UPS clients. This mailing occurred in December of 2002. The paper trucks used by UPS and mailed to its customers were identical to the Track Stars promotional products that Jayson had presented to UPS in 2001. (Compl. ¶9, Exhibit 9).

Jayson seeks to recover against UPS on the quasi-contractual theories of unjust enrichment (Compl., Count I) and quantum meruit (Compl., Count II) as well as conversion, fraud and willful and deceptive trade practice pursuant to G.L. c. 93A, §11.

In support of its claim for unjust enrichment, plaintiff alleges that it developed a promotional line of products known as "Track Stars" and presented those products to UPS with the expectation that if UPS used them, Jayson would be compensated. UPS used the products and did not compensate Jayson. Jayson alleges that UPS has been unjustly enriched (Compl. ¶11 and 12).

In support of its claim for quantum meruit, Jayson alleges that it is entitled to be compensated for the fair market value of its services which in

turn depends upon the number of promotional three dimensional vehicles used by UPS as developed by Jayson. Again, Jayson alleges that it had an expectation of being paid if UPS elected to use its product (Compl. ¶13 and 14).

In furtherance of its conversion claim, Jayson alleges that UPS converted its creative expressions, ideas and product line known as the Track Stars program. (Compl. ¶15 and 16).

In support of its fraud claim, Jayson claims that the misappropriation of its creative ideas, expressions and product line constitutes common law fraud. (Compl. ¶17 and 18). Jayson further alleges that the actions of UPS as described in its complaint constitute a willful and deceptive trade practice within the meaning of G.L. c. 93A, §11 (Compl. ¶19 and 20).

## II.  ARGUMENT

1.  STANDARD

A motion to dismiss under Fed.R.Civ.P. Rule 12(B)(6) tests the sufficiency of the complaint. It should be allowed if and only if "it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proven in support of the claim". 2AS. Moore, Fed. Practice 2245; Nadar v. Citron, 372 Mass. 96 (1977). All allegations in the complaint are treated as true and plaintiff is entitled to all favorable inferences. Davric Maine Corp. v. U.S. Postal Serv., 238 F.3d 58, 60 (1st Cir. 2001); Gen. Motors

- 5 -

Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583 (1992). A complaint by a short and plain statement must simply give the defendant notice of the plaintiff's claim and the grounds on which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957). This simplified notice pleading relies on liberal discovery rules to define disputed facts. Leatherman v. Tarrant County Narcotics, 507 U.S. 163, 168-169 (1993).

2. QUASI CONTRACT CLAIMS

UPS' basic argument that an idea alone, unpatented and uncopyrighted deserves no legal protection, is misplaced in this case. UPS relies on Puente v. President and Fellow of Harvard College, 248 F.2d 799 (1st Cir. 1957). Although that case stands for the proposition that an uncopyrighted or patented idea alone is not protected, it specifically carves out an execution if the idea is acquired and used under

> "such circumstances that the law will imply a contractual or fiduciary relationship between the parties". Puente at 802. (emphasis supplied)

The circumstances alleged by Jayson warrant the conclusion that Jayson is entitled to recover against UPS in quasi-contract. This relationship between the parties began as a business to business solicitation whereby Jayson sought to have UPS use its product for advertising. Jayson presented the product as a "unique sales tool". (Compl., Exhibit 6). Jayson informed UPS that these

products would be a "cost effective" promotional device. (Compl., Exhibit 6). Unlike Puente, *supra* the plaintiff here did not make a gratuitous disclosure of its promotional product. Jayson expected to be paid if UPS used its product. It is clear from the plaintiff's complaint that UPS' representative, Carolyn Boucher specifically requested prices for Jayson's product in the event UPS elected to use it. (Compl. ¶7, Exhibits 7 and 8). Jayson responded with price quotations based on the quantities to be used. The request for these prices is an indication from UPS that it intended to pay for the product if it decided to use it. The price quotation specifically states the price at which Jayson was willing to sell the product, thereby informing UPS of the value of the product.

Jayson's claims for unjust enrichment and quantum meruit have a firm basis in Massachusetts law. While a plaintiff's mere expectation to be paid, coupled with the disclosure of an idea to a defendant may not itself be sufficient to establish the existence of a contract, where a defendant expressly or impliedly assents to pay a plaintiff and thereafter, accepts the plaintiff's services rendered for its benefit in circumstances where a defendant has the option whether to accept or reject those services, the plaintiff should be afforded protection and is entitled to recover in quasi contract. Amisgard v. Bray, 11 Mass.App.Ct. 726, 729 (1981).

A plaintiff who expects to be paid, discloses his idea and informs a defendant of the value of his services with the understanding that if his product

is used he will be compensated can recover in quasi contract. Amisgard, *supra* at 729; Reed Elsevier Inc. v. Gene Pritchard, et al, 2002 Mass. Super. LEXIS 408.

In Amisgard, a tennis player who had an idea for developing a tennis facility and actually performed some early ground work, i.e. land surveys, solicitation of bank financing and negotiations with the owner of real estate, developed the idea and performed his services with the expectation of being paid and who thereafter disclosed his idea to others who subsequently proceeded with the project to his exclusion, was entitled to protection and could recover for the value of his services.

In the case at bar, UPS' request of price quotations from Jayson is an express or at least implied agreement to pay Jayson for his product if subsequently used. By providing that price quotation, Jayson informed UPS of the value of the product and Jayson's expectation to be paid if UPS chose to use the product. Once UPS availed itself of the valuable services rendered by Jayson in circumstances where it was free to accept or reject those services, a promise to pay for the same is imposed by law. Burton v. Burton Stock Car Co., 171 Mass. 437, 440 (1898); Baltimore and Ohio R.R. v. U.S., 261 U.S. 592, 597 (1923).

The agreement here was unilateral at inception, but became binding on both parties upon acceptance by UPS. That acceptance occurred when UPS

used the product after specifically requesting price quotations for that use. Amisgard, *supra* at 8.

Such a quasi contract is an obligation created by law for reasons of justice. Sometimes even against a clear expression of dissent, considerations of equity and morality play a large part in constructing a quasi contract. A person who has been unjustly enriched at the expense of another is required to make restitution. Salamon v. Terra, 394 Mass. 857, 859 (1985). Where there is no evidence that those services are being furnished gratuitously, the law will imply a promise to pay for their value. Evers v. Gilfoil, 247 Mass. 219, 223 (1924); Restatement (Second) of Contracts, §4; Jones v. Canter, 19 Mass.App.Ct. 321, 324 (1985). The actual intent of the party on whom the benefit is conferred is immaterial so long as a reasonable person in the same circumstances would have understood that a benefit had been conferred and that the conferring party did so in reasonable expectation of payment. True v. Lebowich, 243 Mass. 369, (1922).

UPS' reliance on trade secret and copyright law to defeat a straightforward contract claim is misplaced. Even if such law were applicable, UPS' argument fails. An idea which is a novel and original conception has property rights which can be enforced. Puente, *supra* at 802; (citing Smoley v. New Jersey Zinc Co., 106 F.2d 314). Jayson alleges that his product was "unique" (Comp. ¶6, Exhibit 6). In any event, Jayson's product was not a mere

idea. Jayson's idea was reduced to concrete form as embodied in the paper cut out with the words and illustrations appearing thereon. That tangible arrangement and composition of those ideas gives rise to a property right which is entitled to protection. Bowen v. Yankee Network, Inc., 46 F. Supp. 62, 63 (D. Mass. 1942).

3.   REMAINING CLAIMS

Jayson's complaint sufficiently sets forth claims for fraud, conversion and a violation of M.G.L. c. 93A, §11.

A plaintiff who renders services to another which inures to that person's benefit is entitled to restitution if those services were procured by fraud. Restatement, Restitution §40; Douillette v. Parmenter, 335 Mass. 305 (1957). While Massachusetts law is clear that the first element of a fraud claim is misrepresentation, it is equally clear that the misrepresentation need not be direct, it can be implied from the conduct of the defendant. Kannavos v. Annino, 356 Mass. 42, 48 (1969); Wade v. Ford Motor Co., 341 Mass. 596 (1961); Robichaud v. Owens-Illinois Glass Co., 313 Mass. 583, 585 (1943). Silence itself can constitute a misrepresentation where a defendant fails to disclose information that it is bound to reveal. Spencer Cos. V. Chase Manhattan Bank, N.A., 81 BR 194 Mass. (1987).

In the case at bar, Jayson brought its product to UPS who then requested a price quotation clearly giving rise to the conclusion that if UPS

used the product, it would pay for that use. UPS subsequently used Jayson's product, concealed that use from Jayson by not informing Jayson and by not paying Jayson. UPS, armed with the details of Jayson's product and the value of that product as contained in the price quotation (provided at UPS' request) affirmatively concealed its use of the product. That concealment is common law fraud. Solomon v. Birger, 19 Mass.App.Ct. 634, 639 (1985); Salinsky v. Perma-Home Corp., 15 Mass.App.Ct. 193, 197 (1983).

In the circumstances of the instant case, UPS had a duty to inform Jayson it was using its product and to pay for that use. To fail to do so was deceitful conduct with the intention of depriving Jayson of payment. By the silence of UPS, Jayson was induced to rely upon that concealment in order to refrain from seeking payment. UPS intended that its concealment would cause Jayson to refrain from taking action. Jayson did refrain from seeking payment until it discovered the facts which form the basis of this suit, all to its damage.

The plaintiff here has alleged sufficient facts to establish fraud, especially through the prism of an "exceedingly liberal reading" of the complaint. Equip. & Sys. Fur. Indus. V. North Meadows Constr. Co., 59 Mass.App.Ct. 931, 932 (2003) (see Fn.3). Malice, intent, knowledge and other conditions of mind may be averred generally. Swierkiewicz v. Sorema N.A., 584 U.S. 506, 513 (2002).

UPS argues that the count for conversion must fail because intangible property cannot be converted. Jayson's products were tangible for the reasons

stated above. While the product originally came into UPS' possession via Jayson's unilateral solicitation, UPS' subsequent use of the product without payment was an exercise of dominion and control over the product which constitutes conversion. Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 650 F.Supp. 838, 848 (D. Mass. 1986). Even though the paper products themselves which were actually sent to UPS may not have much intrinsic value, i.e. cost of paper, printing, etc., the conversion in this instance entitles Jayson to the fair and reasonable value of the product viewed as an advertising tool. Additionally, Jayson is entitled to special damages because of the special injury it sustained in the loss of business revenue. Manhattan Clothing Co. v. Goldberg, 322 Mass. 472, 475-576 (1948).

UPS' argument concerning the sufficiency of the count pursuant to M.G.L. 93, §11 must also fail. The willful failure to pay for services in a business to business context where the injured party suffers loss of money and property is a violation of that statute. Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47 (D. Mass. 1998).

Massachusetts courts have consistently held that conduct in disregard of known contractual arrangements intended to secure benefits for the breaching party constitutes an unfair trade practice. Anthony's Pier 4, Inc. v. HBC Assocs., 411 Mass. 451 (1991); Wang Labs., Inc. v. Business Incentives, Inc., 398 Mass. 854 (1986). Where one party to an agreement breaches the contract

to gain an unfair advantage over the other, the breach has an extraordinary quality that gives it a rancid flavor of unfairness. <u>Atkinson v. Rosenthal</u>, 33 Mass.App.Ct. 219 (1992). Chapter 93A liability is decided on a case by case basis, relying on the fact specific nature of the inquiry. <u>Linkage Corp. v. Trustees of Boston Univ.</u>, 425 Mass. 1 (1997).

Jayson's complaint clearly sets forth all of the above elements and further indicates that Jayson suffered a loss of money as a result of UPS' failure to pay the quoted prices for the use of the product. Further, UPS' fraudulent concealment of its use of the product supports an action under M.G.L. c. 93A, §11. <u>McEvoy Travel Bureau, Inc. v. Norton Co.</u>, 408 Mass. 704 (1990); <u>Computer Systems Engineering, Inc. v. Qantel Corp.</u>, 571 F.Supp. 1365 (1983).

### III. CONCLUSION

For the reasons stated above, the plaintiff requests the Court to deny

UPS' motion to dismiss. The allegations set forth in the complaint are sufficient to establish each cause of action that the defendant seeks to dismiss.

RESPECTFULLY SUBMITTED,<br>
PLAINTIFF, JAYSON ASSOCIATES, INC.<br>
By its attorney,<br>
<br>
*/s/ Joseph J. Brodigan*<br>
Joseph J. Brodigan, P.C.<br>
Brodigan And Gardiner<br>
40 Broad Street<br>
Boston, MA  02109<br>
617-542-1871<br>
BBO #058020

DATED:  May 7, 2004

## CERTIFICATE OF SERVICE

I, Joseph J. Brodigan, P.C., attorney for the plaintiff in the above action, certify that I served the following documents on the defendant in the above action.

1. plaintiff's opposition to motion to dismiss;
2. plaintiff's memorandum of law in support of its opposition to defendant's motion to dismiss all counts of plaintiff's complaint; and
3. request for oral argument.

Such service was made by mailing a letter, postage prepaid, containing copies of said documents, directed to Elizabeth A. Kowal, Esquire, Murtha Cullina LLP, 99 High Street, Boston, MA 02110.

This statement is made under the penalties of perjury.

*/s/ Joseph J. Brodigan*<br>
Joseph J. Brodigan, P.C.