UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAYSON ASSOCIATES, INC.,
    Plaintiff

V.

CIVIL ACTION
NO. 04-10771-RWZ

UNITED PARCEL SERVICE CO.,
    Defendant

## JOINT PRETRIAL CONFERENCE MEMORANDUM
## PURSUANT TO L.R. 16.5

I.    **CONCISE SUMMARY OF THE EVIDENCE**

    A.    <u>Plaintiff's evidence</u>

The plaintiff's evidence will be that it is a Massachusetts corporation engaged in business as an advertising agency. The defendant is a Delaware corporation registered to do business in Massachusetts and is engaged in the business of delivering freight, parcels and personal mail. The plaintiff developed a line of promotional advertising products called "Track Stars" consisting of three-dimensional paper UPS trucks and vehicles. These promotional products consisted of paper with precut lines to enable a user to punch out a precut vehicle and assemble it. The assembly resulted in a paper model of a UPS delivery truck. All of the products developed by the plaintiff contained the following language:

ATL01/11950915v2

> "Drawings and the concept they embody are the sole property of Jayson Associates, Inc. All rights reserved. © 2000 Jayson Associates, Inc."

In April of 2001, the plaintiff forwarded a letter to UPS indicating that it had produced this line of promotional product. The plaintiff indicated that these were "cost effective fun toys" which would make great impressions on those who received them and that they were an effective means to advertise. Jayson further indicated that the product it had developed was a unique sales tool.

On April 20, 2001, UPS responded to Jayson indicating that they were not interested in "sponsorship opportunities". In May of 2001, the plaintiff's representatives attended an open house conducted by the defendant in Chelmsford, Massachusetts. It discussed its Track Stars advertising program with UPS representatives. At the specific request of defendant, the plaintiff sent another letter, dated May 22, 2001, again presenting its Track Stars promotional product to the defendant. That letter included a three-dimensional UPS truck and race car cut out. In that letter, the plaintiff once again indicated that it was presenting a line of promotional products as a cost effective way to advertise. Jayson reiterated that the product would be a "unique" sales tool. That letter dated May 22, 2001 was sent to UPS representatives in Chelmsford, Massachusetts and Hudson, New Hampshire.

In October of 2001, the plaintiff once again presented this product to a representative of the defendant. That representative, Carolyn Boucher, specifically requested pricing quotations from plaintiff which plaintiff provided in a letter dated October 30, 2001. That pricing information included all art, production, printing, varnish, die cutting and packaging costs. Thereafter, plaintiff received no response from defendant.

In February, 2003, the plaintiff learned that the defendant had used the three dimensional paper UPS delivery trucks in a nationwide promotional campaign. The paper trucks used by the defendant and mailed to its customers were the same as the Track Stars promotional products that Jayson had presented to UPS in 2001.

In 2002, the defendant distributed 620,560 holiday cards which contained the Track Stars promotional product developed by the plaintiff. The plaintiff's profit margin on the products was $.085 per card for quantities greater than 500,000 but less than 1,000,000. Therefore, plaintiff's damages are $52,747.60, together with interest and costs.

The plaintiff also is requesting damages pursuant to G.L. c. 93A, §11 in the amount of three times the aforesaid damages, together with its interest, costs and attorneys' fees as provided for by that statute.

**B. Defendant**

Defendant UPS will offer evidence to prove that the holiday cards that were sent to certain customers by UPS in 2002 (the "2002 Holiday Card") were developed by an outside advertising agency named Brierley & Partners ("Brierley"). Specifically, documents and witness testimony will show that the idea and design of the 2002 Holiday Card originated with Brierley's creative team in Los Angeles, California in the fall of 2001.

UPS submits that the Plaintiff has no evidence to support that the idea and design of the 2002 Holiday Card were stolen from the samples the plaintiff sent or gave to UPS employees with no connection whatsoever to the 2002 Holiday Card project. The evidence will show that any sample marketing materials that the plaintiff sent or gave to UPS were never received nor seen by any employee or associate of Brierley, nor by any UPS employee involved in commissioning or overseeing the 2002 Holiday Card Project. On the contrary, UPS submits that the Plaintiff's claims are based on unsupported speculation and conjecture.

II. **STIPULATED FACTS**

The plaintiff and defendant stipulate to the following facts:

1. That Jayson Associates, Inc. ("Jayson") is a Massachusetts corporation with a usual place of business in Winchester, MA.

2. That UPS is a Delaware corporation with its principal place of business in Atlanta, Georgia.

3. That UPS conducts business in Massachusetts.

4. That UPS received a letter dated April 11, 2001 from Jayson addressed to John Beystehner, Senior VP, Worldwide Sales & Marketing.

5. That UPS responded to the April 11, 2001 letter to John Beystehner with a response letter from Rosemary Windsor dated April 20, 2001. UPS stipulates to the authenticity of the letter attached to the complaint as Exhibit 5.

6. That Jay Taurasi gave UPS employee Carolyn Boucher sample marketing materials in October 2001.

7. That 620,560 of the Holiday Cards which are the subject of this suit were distributed by defendant to its customers in 2002.

8. That Jayson Associates, Inc.'s expected profit margin on its proposed product was $.085 per card.

III. **CONTESTED ISSUES OF FACT**

    A.   **Plaintiff**

The plaintiff contends that the defendant used its advertising product as developed by the plaintiff without compensating the plaintiff for the use of that product. See plaintiff's version of the evidence, IA.

**B.     Defendant**

UPS contests that the 2002 Holiday Card is based on, modeled after, or related in any way whatsoever to the correspondence and samples Plaintiff sent or gave to certain UPS employees. See Defendant's version of the evidence, IB.

IV.   **JURISDICTIONAL QUESTIONS**

There are no jurisdictional questions.

V.    **QUESTIONS RAISED BY PENDING MOTIONS**

None.

VI.   **ISSUES OF LAW**

<u>Plaintiff's version</u>

The plaintiff seeks to recover from the defendant on the implied contractual theories of unjust enrichment and quantum meruit. This matter is not an appropriate subject for summary judgment because the plaintiff developed a promotional line of advertising products, presented them to the defendant with the expectation that if the defendant used them, the plaintiff would be compensated. The defendant used the products but did not compensate the plaintiff. Therefore, the plaintiff is entitled to be compensated for the fair market value of its services because in the circumstances presented by this case, the law will imply a contractual duty to compensate the plaintiff. <u>Puente v. President and Fellow of Harvard College</u>, 248 F.2d 799 (1st Cir.

1957). The relationship between the parties began as a business solicitation whereby the plaintiff sought to have the defendant use its product for advertising. The plaintiff expected to be paid if the defendant used its product. The defendant, through its representative Carolyn Boucher, specifically requested prices from the plaintiff for the use of its products. The defendant responded with price quotations. This was a clear indication that the defendant intended to pay for the product if it decided to use it. All of this constitutes issues of fact. While a plaintiff's mere expectation to be paid, coupled with its disclosure of an idea for a product to the defendant may not itself be sufficient to establish the existence of a contract, where a defendant expressly or impliedly assents to pay the plaintiff and thereafter, uses the plaintiff's product in circumstances where the defendant has the option to accept or reject the product, the plaintiff should be afforded protection and is entitled to recover in quasi contract. Amisgard v. Bray, 11 Mass.App.Ct. 726, 729 (1981). Stated differently, a plaintiff who expects to be paid, discloses his idea and informs the defendant of the value of the services with the understanding that if the product is used, he will be compensated, can recover in quasi contract. Reed Elsevier, Inc. v. Gene Pritchard et al, 202 Mass. Super. Lexis 408; Burton v. Burton Stock Car Co., 171 Mass. 437, 440 (1898). A person who has been unjustly enriched at the expense of another is required to make restitution. Salamon v. Terra, 394 Mass. 857, 859 (1985).

The willful failure to pay for services in a business to business context, where the injured party suffers loss of money and property is a violation of G.L. c. 93A, §11. Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3rd 47 (D. Mass. 1998). Disregard of known contractual arrangements to secure benefit for the breaching party constitutes an unfair trade practice. Anthony's Pier 4, Inc. v. HBC Associates, 411 Mass. 451 (1991). Here, the defendant gained an unfair advantage over the plaintiff by using its product, failing to inform that use, and failing to compensate the plaintiff for what it was due. Atkinson v. Rosenthal, 33 Mass.App.Ct. 219 (1992).

**Defendant's Version**

At the Status Conference that took place on April 7, 2005, the Court indicated that UPS would have to seek leave to file a motion for summary judgment under Rule 56.

UPS submits that it is entitled to summary judgment for the following reasons:

> 1. Plaintiff has failed to make *a prima facie* case for unjust enrichment or quantum meruit.
> 2. Plaintiff has failed to establish any evidence to support a claim for unfair business practices under Section 93A.

While UPS requests the opportunity to fully brief the issues identified above, UPS sets forth the following arguments and citations of authority in support of summary judgment:

- 8 -

### Counts One and Two (Unjust Enrichment and Quantum Meruit)

Massachusetts law treats claims for unjust enrichment and quantum meruit as having common elements. *See Bolen v. Paragon Plastics. Inc.,* 747 F. Supp. 103, 106 (D. Mass. 1990). In order to sustain these claims, Plaintiff has the burden of establishing three elements. *See id.* at 106~107; *Mass Cash Register, Inc. v. Comtrex ( Systems Corp,* 901 F. Supp. 404,423 (D. Mass. 1995). First, it must show that it conferred a measurable benefit on UPS. *Bolen,* 747 F. Supp. at 106. Second, Plaintiff must show that UPS accepted the services with the expectation of compensating Plaintiff. *Id.* at 107. Finally, Plaintiff must demonstrate that at the time it rendered the beneficial service to UPS it had a reasonable expectation of receiving compensation from UPS. *Id.*

Plaintiff's claims fail at the first step of analysis. After a full opportunity to engage in discovery, including taking testimony from UPS witnesses and requesting UPS business records, Plaintiff cannot present any evidence from which a jury could conclude that Jayson conferred a measurable benefit on UPS, i.e. that the 2002 Holiday Card was based in any way on Jayson's samples. Witness testimony and project documents unequivocally reflect that the 2002 Holiday Card was conceived, designed, and created independently by Brierley with no input from any person

ATL01/11950915v2

connected with the Plaintiff or the Plaintiffs' products.

Moreover, it is undisputed that Brierley and UPS documents and testimony reveal that the concept for the 2002 Holiday Card was under development by September 2001, and substantially complete by October 2001. Thus, Jayson Associates' submission of samples to Carolyn Boucher in October 2001 *could not* have been the genesis for the concept and design of the 2002 Holiday Card. In denying UPS' Motion to Dismiss Counts One and Two of the Complaint, this Court relied in part on Ms. Boucher's inquiry as to Jayson's proposed prices in October 2001. With the benefit of discovered facts and documents, it is now clear that Ms. Boucher's receipt of samples and inquiry as to prices have no temporal or geographic connection to the Brierley design. Consequently, Ms. Boucher's dealings with the Plaintiff have no relevance to the ultimate issue – whether UPS stole Jayson's idea and incorporated it into the 2002 Holiday Card. Because the evidence would be irrelevant, UPS intends to file a motion *in limine* to exclude evidence related to the Plaintiff's submission of materials to Ms. Boucher and the subsequent history of those materials. "Evidence which is not relevant is not admissible: Fed. R. Evid. 402.

The necessary exclusion of this evidence amplifies the Plaintiff's lack of proof on Counts One and Two. Without it, Plaintiff can only point to two unsolicited letters to executives at the apex of the UPS organization

- 10 -

ATL01/11950915v2

and one instance of giving samples to a recruiter at a job fair in Chelmsford, Massachusetts. Plaintiff has been unable to develop any facts that connect those unsolicited submissions to anyone associated with the development of the 2002 Holiday Card. Instead of tangible evidence, Plaintiff relies on speculation about what *could have* happened. "Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact." *Horta* v. *Sullivan,* 4 F.3d 2, 11 (1 st Cir. 1993). Thus UPS is entitled to summary judgment.

### Count Five (Chapter 93A)

"[T]he boundaries of what may qualify for consideration as a [Chapter[ 93A violation is a question of law." *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47 (1st Cir. 1998). The Appeals Court of Massachusetts has established that Chapter 93A claims will not lie in the typical business dispute: "The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Levings* v. *Forbes & Wallace. Inc.,* 396 N.E.2d 149, 153 (Mass. App. Ct. 1979). For example, the U.S. Court of Appeals for the First Circuit has held that the "general meter" of Chapter 93A claims

> is that the defendant's conduct must be not only wrong, but also egregiously wrong - and this standard calls for determinations of egregiousness

> well beyond what is required for most common law claims.

*Massachusetts School of Law at Andover. Inc.* v. *American Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998). In order for a 93A claim to survive, the Plaintiff must prove that UPS acted with "a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce:" *Levings,* 396 N.E.2d at 153. *Atkinson v. Rosenthal*, 598 N.E.2d 666 (Mass. App. Ct. 1992), cited by the Plaintiff above, recognizes that conventional damages are sufficient to compensate for ordinary breach of contract claims (or, in this case, quasi-contract). *See id.* at 670-71. That case held that 93A damages are only appropriate where the evidence supports an "additional factor" of extortionate behavior. *Id.*

> In the absence of conduct having that quality, a failure to perform obligations under a [contract], even though deliberate and for reasons of self-interest, does not present an occasion for invocation of c. 93A remedies.

*Id.*

Plaintiff has uncovered no evidence that would reflect extortionate behavior, or even knowing or willful misconduct. In fact, Plaintiff has no evidence to even support that UPS used its idea at all. Were this claim to survive, there would be no limit to the application of Chapter 93A claims to business disputes. An

aggrieved plaintiff will always believe that it has been treated in an "unfair" manner by a defendant because every plaintiff believes that the defendant acted unlawfully. However, every business plaintiff is not also entitled to treble damages and attorneys' fees under Chapter 93A. Therefore, UPS is entitled to summary judgment on Count V because the evidence does not support the high standards of egregious conduct required to sustain such a claim.

Moreover, in order to sustain a 93A claim, the Plaintiff must establish that the allegedly unfair act or practice occur "primarily and substantially" in Massachusetts. *See Arthur D. Little, Inc.*, 147 f.3d at 54. Even if all of the Plaintiff's allegations are assumed to be true, the wrongdoing that Plaintiff alleges would have occurred in Atlanta, where UPS is headquartered, or in Los Angeles, where Brierley's creative team is located. Thus, UPS is entitled to summary judgment on Count Five of the Complaint.

## VII. REQUESTED AMENDMENTS TO THE PLEADINGS

None.

## VIII. ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION

None.

## IX. PROBABLE LENGTH OF TRIAL

Plaintiff and defendant concur that the case can be tried within three (3) days.

## X. WITNESSES

<u>Plaintiff</u>

The plaintiff expects to call the following witnesses:

1. James Taurasi, Jayson Associates, Inc., 8 Winchester Place, Suite 201, Winchester, MA 01890;
2. Carolyn Boucher, UPS, 14 Country Club Drive, Apt. #4, Manchester, NH
3. John Sheehan, UPS, 15 Arlington Street, Watertown, MA

The plaintiff may call:

4. Jill Goran, Brierley and Partners, Los Angeles, California

Defendant expects to call:

1. Jamie Kravitz
   UPS
   55 Glenlake Parkway
   Atlanta, Georgia  30328

2. Jill Goran (by videotaped deposition)
   Brierley & Partners
   Los Angeles, California

Defendant may call:

3. Carolyn Boucher
   UPS
   14 Country Club Drive
   Apartment 14
   Manchester, New Hampshire

ATL01/11950915v2

4. John Sheehan
   UPS
   15 Arlington Street
   Watertown, Massachusetts

5. Michael Rodrigues
   UPS
   488 Deermeadow Rd.
   Webster, New Hampshire

6. Rosemary Windsor-Williams Longenecker
   Formerly of UPS
   Clearwater, Florida

## XI. PROPOSED EXHIBITS

### A. Plaintiff

1. paper cut outs

   a. UPS race truck assembled and unassembled
   b. UPS package truck assembled

2. Jayson letter to J. Kelley, 4/11/01
3. Jayson letter to J. Beystehner, 4/11/01
4. UPS letter, 4/20/01
5. Jayson letter to Michael Rodrigues, 5/22/01
6. Jayson letter to Robert Yates, 5/23/01
7. Jayson letter to Carolyn Boucher, 10/24/01
8. Jayson letter to Carolyn Boucher, 10/30/01
9. Two photos of trucks used by UPS as advertising device
10. UPS open house invitation
11. business card – Michael Rodrigues
12. business card – Carolyn Boucher
13. Joseph J. Brodigan letter, 11/11/03
14. Alston & Bird letter, 9/19/03
15. Brodigan And Gardiner letter, 6/19/03
16. Memo to Greenwell, 8/8/03, (Bates 191, 192)

ATL01/11950915v2

17. E-mail, 8/22/01 to Nance, (Bates 16)
18. design brief, (Bates 1)
19. communication strategy brief, (Bates 2, 3, 4)
20. Brierley preliminary production estimate and UPS purchase order, (Bates 13, 14, 15)
21. UPS job specs dated 8/31/01 (no Bates number, this document has not yet been produced by defendant)
22. concept 1 through concept 6, (Bates 5, 6, 7, 8, 9, 10, 11, 12)
23. memo, 9/5/01, (Bates 17, 18)
24. memo, 9/26/01, (Bates 189)
25. memo, 9/28/01, (Bates 190)
26. memo, 10/03/01, (Bates 47)
27. memo, 10/08/01, (Bates 169 through 171)
28. memo, 10/08/01, (Bates 188)
29. drawings, 10/09/01, (Bates 86 through 105)
30. memo, 10/11/01, (Bates 75, 76)
31. memo, 10/11/01, (Bates 64, 65)
32. memo, 10/11/01, (Bates 66 – 74)
33. specs, 10/11/01, (Bates 941)
34. memo, 11/01/01, (Bates 117 and 120)
35. memo, 11/13/01, (Bates 150)
36. 2001 holiday programs, (Bates 165, 166)
37. card proforma, (Bates 19-28)
38. card proforma, Bates (162 – 164)
39. strategic usage guide, 2002 UPS holiday card, (Bates 193-206)

### B. Defendant –

Defendant may tender the following documentary exhibits:

1. All exhibits identified by Plaintiff above.
2. Exemplar of 2002 Holiday Card distributed by UPS
3. All exhibits to all depositions taken by either party in this case to date, including those itemized below:

| Ex. # | Bates # | Deposition | Pg. # in Dep. | Description |
|---|---|---|---|---|
| 1 | UPS 00002 - 00004 | Jill Goran | 14 | Communications Strategy Brief |
| 2 | UPS 00016 | Jill Goran | 21 | Email re: 2001 Holiday Card dated August 21 and 22, 2001 |

| 3 | UPS 00001 | Jill Goran | 24 | Program Design Brief |
|---|---|---|---|---|
| 4 | UPS 00005 – 00012 | Jill Goran | 33 | "Concepts" notes from brainstorming session |
| 5 | UPS 00017 | Jill Goran | 35 | Change Notice |
| 6 | UPS 00941 | Jill Goran | 86 | "Final Specs" |
| 7 | UPS 00013 – 00015 | Jill Goran | 88 | Preliminary Production Estimate |
| 8 | UPS 00067 | Jill Goran | 108 | Client Review Form |
| 9 | N/A | James Taurasi | 28 | Track Stars Race Car "8" |
| 10 | N/A | James Taurasi | 28 | Track Stars Race Car "88" |
| 11 | N/A | James Taurasi | 34 | UPS Truck Punch-Out |
| 12 | N/A | James Taurasi | 37 | Taurasi Letter to Kelly 4/11/01 |
| 13 | N/A | James Taurasi | 42 | Taurasi Letter to Beystehner 4/11/01 |
| 14 | N/A | James Taurasi | 43 | Windsor Letter to Taurasi 4/20/01 |
| 15 | N/A | James Taurasi | 46 | "Need to Get Ahead" Race Car Brochure |
| 16 | N/A | James Taurasi | 51 | Taurasi Letter to Yates 5/23/01 |
| 17 | N/A | James Taurasi | 56 | Taurasi Letter to Rodrigues 5/22/01 |
| 18 | N/A | James Taurasi | 57 | Taurasi Letter to Boucher 10/24/01 |
| 19 | N/A | James Taurasi | 64 | Taurasi Letter to Boucher 10/30/01 |
| 20 | N/A | James Taurasi | 69 | UPS Track Stars Brochure |
| 21 | N/A | James Taurasi | 76 | Holiday Card |
| 22 | N/A | James Taurasi | 84 | Plaintiff's Answers to Interrogatories |
| 23 | N/A | James Taurasi | 85 | Plaintiff's Initial Disclosures |

ATL01/11950915v2

## XII. OBJECTIONS TO EVIDENCE IDENTIFIED IN PRETRIAL DISCLOSURE REQUIRED BY FRCP 26(a)(3)

Defendant objects to Proposed Exhibit No. 21 identified by Plaintiff in XIA above. Plaintiff's designation implies that such a document independently exists now or existed at some time historically, and that Defendant "has not yet" produced it. In fact, Defendant submits that the document referenced as "UPS job specs dated 8/31/01" in the document identified by Bates No. UPS00014 is likely a reference to the Preliminary Production estimate that has been produced with the Bates No. UPS00013. Defendant's designation of a document not known to exist is not proper.

Defendant also objects to Plaintiff's designation of Proposed Exhibit No. 9 to the extent that it refers to the 2002 Holiday Card as "an advertising device." The card was in fact sent to wish existing customers happy holidays.

The parties have agreed that each party reserves its rights to file additional objections prior to trial and to supplement this Pretrial Memorandum to the extent allowed by the Court.

PLAINTIFF
By its attorney,

Joseph J. Brodigan, P.C.
Brodigan And Gardiner
40 Broad Street
Boston, MA  02109

- 18 -

                                    617-542-1871
                                    BBO #058020

                                    DEFENDANT
                                    By its attorney,

                                    */s/ Christina Hull Eikhoff*
                                    Christina Hull Eikhoff
                                    Alston & Bird LLP
                                    1201 West Peachtree Street
                                    Atlanta, Georgia 30309-3424
                                    404-881-7000

DATED: May 24, 2005

ATL01/11950915v2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAYSON ASSOCIATES, INC.,
    Plaintiff

V.                                          CIVIL ACTION
                                            NO. 04-10771-RWZ

UNITED PARCEL SERVICE CO.,
    Defendant

## CERTIFICATE OF SERVICE

    I, Joseph J. Brodigan, P.C., attorney for the plaintiff in the above action, certify that I served the Joint Pretrial Memorandum on the defendant in the above action.

    Such service was made by delivering a letter, postage prepaid, containing copies of said memorandum, directed to Elizabeth A. Kowal, Esquire, Murtha Cullina LLP, 99 High Street, Boston, MA 02110 and Christy Eikhoff, Esquire, Alston & Bird LLP, 1201 West Peachtree Street, Atlanta, GA 30309-3424.

    This statement is made under the penalties of perjury.

                                                      *[signature]*
                                                      Joseph J. Brodigan, P.C.

DATED: May 25, 2005